IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GLORIA THOMPSON                                                                    PLAINTIFF

                v.                       Civil No. 11-2042

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                     DEFENDANT

## MEMORANDUM OPINION

I.   **Factual and Procedural Background**

Plaintiff, Gloria Thompson, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her DIB application on November 27, 2007. Tr. 44. She filed her SSI application on March 6, 2008. Tr. 44. In both applications, Plaintiff alleged a disability onset date of January 1, 2003, due to bipolar disorder, anxiety, depression, seizures, and allergies. Tr. 145. On the alleged onset date, Plaintiff was forty two years old with a limited education. Tr. 55, 153, 514. She has past work as a general laborer, waitress, carpentry laborer, assembler, and food preparer. Tr. 55, 146-147, 155-162.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 62-68, 70-73. At Plaintiff's request, an administrative hearing was held on August 18, 2009. Tr. 19-36. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on January 4, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 41-57.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on January 24, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff has a history of depression, suicide attempts, abdominal pain, allergies, and eczema. Plaintiff underwent allergy testing in March 2002. Tr. 249-252. Results revealed allergies to mold spores, banana, cats, pork, wheat, and beef. Tr. 249. Paul A. Schkade, M.D., diagnosed Plaintiff with eczema, hives, and severe pruritus with insomnia. Tr. 249-250. Dr. Schkade prescribed Zyrtec and Hydroxyzine. Tr. 250. He noted that psychological distress could play a very strong role in Plaintiff's medical problems. Tr. 252. Plaintiff was treated on numerous occasions in the emergency room for severe rashes and eczema. Tr. 245-248, 333-344, 375-381, 465-470, 645-647, 682-768.

On February 21, 2007, Plaintiff was treated at Sparks Regional Medical Center ("Sparks") for acute anxiety and stress related to her husband's heart attack and subsequent death. Tr. 369-374, 471-475.

On April 15, 2007, Plaintiff was transferred from Sparks to The BridgeWay Hospital after attempting suicide by cutting her wrist. Tr. 273-284, 382-389, 458-464. On intake, Plaintiff was in acute distress over the death of her husband. Tr. 275. Plaintiff's medications included Lexapro, Xanax, Hydrocodone/acetaminophen, and Zyrtec. Tr. 275. On examination, Plaintiff was depressed, sad, and tearful, with restricted range. Tr. 276. Motor activity was slowed. Tr. 276. Thought processes were linear and goal-directed and thought content was positive for suicidal thoughts without current intent or plan. Tr. 277. Plaintiff's insight was good, but her judgment was poor based on self-harm. Tr. 277. Richard Owings, M.D., diagnosed Plaintiff with major depressive

disorder, single episode, severe, without psychotic features, and bereavement. Tr. 278-279. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 20. Tr. 279.

On April 17, 2007, Dr. Owings diagnosed Plaintiff with adjustment disorder with depressed mood and a history of recurrent major depression. Tr. 281-282. He determined Plaintiff required inpatient hospitalization and suicide precautions. Tr. 282. Dr. Owings increased Plaintiff's dosage of Lexapro and switched her from Xanax to Klonopin. Tr. 282. Plaintiff was discharged from BridgeWay on April 20, 2007. Tr. 273-274. At the time of discharge, Plaintiff expressed hopefulness about recovery. Tr. 273. Dr. Owings estimated Plaintiff's GAF score at 50 and prescribed Valium, Celexa, Bactrim, and Vicodin. Tr. 274. She was referred to Western Arkansas Counseling and Guidance Center ("WACGC") for continuing treatment. Tr. 274.

On May 12, 2007, Plaintiff was transferred from Sparks to Arkansas State Hospital after a suicide attempt. Tr. 285-288, 390-398, 450-457. On examination, Plaintiff appeared depressed with a dysphoric tearful mood. Tr. 285-286. Plaintiff's thoughts were rational, relevant, and goal-directed, but her judgment was limited due to continued suicidality. Tr. 285. Kenneth Dowless, M.D., diagnosed Plaintiff with major depressive disorder, single episode, and estimated her GAF score at 21. Tr. 287-288. While hospitalized, Plaintiff was treated with Celexa, Valium, and Zyrtec. Tr. 287. At the time of discharge on May 30, 2007, she was in good spirits and denied any thoughts of harming herself. Tr. 287. Dr. Dowless estimated Plaintiff's GAF score at 60 and found her prognosis guarded due to depression, situational problems, and a history of self-harmful behavior. Tr. 288.

On June 11, 2007, Plaintiff presented to WACGC for a diagnostic interview. Tr. 311-320. Plaintiff reported a history of suicide attempts and recent alcohol abuse. Tr. 311. She was taking

Citalopram and Zyrtec. Tr. 312. Plaintiff was very emotional and tearful throughout the interview. Tr. 312. Her judgment, insight, concentration, and attention were impaired. Tr. 312. Jerry Stearman, a licensed psychological examiner, estimated Plaintiff's intelligence to be within the average range. Tr. 312. He diagnosed Plaintiff with major depressive disorder, severe, single episode without psychotic features, adjustment disorder with mixed disturbance of emotions and conduct, and personality disorder not otherwise specified ("NOS"), with borderline features. Tr. 313-314. Dr. Stearman estimated Plaintiff's GAF score at 50. Tr. 313-314. He recommended Plaintiff for individual therapy and medication management. Tr. 314. However, Plaintiff did not keep her psychiatric assessment and missed several appointments. Tr. 316. After being confronted about her behavior, Plaintiff terminated services. Tr. 316.

On July 24, 2007, Plaintiff was admitted to Saint Joseph Hospital in Omaha after she fell down and started shaking and foaming at the mouth. Tr. 289-310. Plaintiff reported no history of seizure activity. Tr. 298. A CT of Plaintiff's head was negative for acute changes. Tr. 290, 305. An MRI of Plaintiff's head revealed no acute intracranial abnormalities. Tr. 290, 307. An electroencephalogram ("EEG") revealed normal activity in both awake and drowsy states. Tr. 290, 310. A psychiatric assessment resulted in a diagnosis of severe bereavement with a possibility of bipolar disorder. Tr. 290. Upon discharge, Plaintiff was instructed to discontinue Celexa and begin Seroquel. Tr. 291. Devin J. Fox, M.D., noted that because Plaintiff had no history of seizures and her EEG and MRI imagining revealed no abnormalities, he would not prescribe Dilantin. Tr. 291.

On August 27, 2007, and November 8, 2007, Plaintiff was treated at Sparks for suicidal ideation. Tr. 402-449. In November, Plaintiff's blood alcohol level was 432 mg/dl. Tr. 419. She was assessed with depression and alcohol intoxication and instructed to follow up with rehabilitation

services and counseling. Tr. 410.

On April 1, 2008, Plaintiff presented to St. Edward Mercy Medical Center ("St. Edward's") after she reportedly had a seizure. Tr. 486-501, 270-272. A CT of Plaintiff's head revealed no hemorrhage, mass, midline shift, or extra-axial collection. Tr. 270-271, 501. However, mild cerebral and cerebellar volume loss was noted, which was possibly related to chronic Dilantin therapy. Tr. 270-271, 501. Plaintiff's blood alcohol level was 274 mg/dl.[1] Tr. 491. Plaintiff was diagnosed with syncopal episodes, alcoholism, and depression. Tr. 498. She was discharged with a prescription for Ativan and a recommendation to Alcoholics Anonymous. Tr. 489.

On April 3, 2008, Plaintiff had a neurological consultation with Tonya L. Phillips, M.D. Tr. 502-511. Plaintiff reported drinking "pretty much every day." Tr. 502. A neurological examination was normal. Tr. 503-504. An EEG was normal, but showed diffuse low voltage beta activity which could be seen in anxiety states as well as an effect of medication. Tr. 272, 506, 511. Dr. Phillips noted a history of what appeared to be generalized tonic-clonic seizures with some history of alcohol use. Tr. 504. She was unsure to what extent alcohol was contributory. Tr. 504. She also suspected possible pseudoseizure while Plaintiff was in Nebraska. Tr. 504. Dr. Phillips believed there was some psychiatric disease accompanying Plaintiff's symptoms. Tr. 504. She instructed Plaintiff to avoid driving and any other activity that might endanger her if she were to have a seizure. Tr. 505.

On July 23, 2008, Plaintiff saw Denise LaGrand, Psy.D., for a consultative mental evaluation. Tr. 512-518. At the time of evaluation, Plaintiff was taking Keppra for her seizures. Tr. 513. She stated she should take other medications, including Seroquel, but could not afford them. Tr. 513. Plaintiff reported occasional alcohol use, usually consisting of a few glasses of wine. Tr. 513. She

---

[1] A blood alcohol level above 300 mg/dl is considered toxic. Tr. 494.

reported extensive abuse as a child. Tr. 513.

On examination, Plaintiff's thoughts were organized, logical, and goal-directed, and she was able to stay focused throughout the appointment. Tr. 514. Thought processes and content were appropriate, and Plaintiff's memory was adequate. Tr. 514-515. Plaintiff described her mood as depressed and anxious, but she denied suicidal ideation. Tr. 514. Dr. LaGrand estimated Plaintiff's intelligence to be within the low average range. Tr. 516. She diagnosed Plaintiff with alcohol abuse, major depressive disorder, moderate, generalized anxiety disorder, and personality disorder NOS, with borderline and dependent traits. Tr. 516. Dr. LaGrand estimated Plaintiff's GAF score at 50-60. Tr. 516. She found no difficulties with activities of daily living and observed no deficits in memory, persistence, or pace. Tr. 516. Dr. LaGrand determined Plaintiff had a low average ability to follow instructions and respond in a work setting, a fair ability to cope with the typical mental/cognitive demands of basic work-like tasks, sustain concentration and persistence on basic tasks, and complete work-like tasks within an acceptable time frame, and a good ability to maintain appearance, be reliable, communicate and interact in a socially adequate manner, and function independently. Tr. 516. Overall, Dr. LaGrand found that Plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors/coworkers was low average. Tr. 516.

In a Psychiatric Review Technique Form ("PRTF") dated August 8, 2008, Kay M. Gale, M.D., considered listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders), but determined Plaintiff's impairments did not meet or equal a listing. Tr. 528-541. She found mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in

maintaining concentration, persistence, or pace, and no episodes of compensation, each of extended duration. Tr. 538. In a Mental Residual Functional Capacity ("RFC") Assessment, Dr. Gale found Plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 542-545. She found Plaintiff not significantly limited in the remaining work-related categories. Tr. 542-545. Dr. Gale determined Plaintiff was capable of performing unskilled work. Tr. 544.

In a Physical RFC Assessment dated August 13, 2008, David L. Hicks, M.D., determined Plaintiff must avoid all exposure to hazards, such as machinery and heights. Tr. 546-553. He found no other physical limitations. Tr. 546-553.

On September 8, 2008, Plaintiff was admitted to St. Edward's after a reported seizure. Tr. 554-561, 648-650. On examination, Plaintiff was mildly confused and sluggish in answering questions, but her neurological examination was otherwise normal. Tr. 555-561. Her medications included Keppra and Zyrtec. Tr. 560. Plaintiff was assessed with seizure disorder and instructed to follow up with Dr. Phillips. Tr. 557.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2003, the alleged onset date. Tr. 46. At step two, the ALJ found Plaintiff suffered from seizure disorder, depression, anxiety, personality disorder, and substance addiction, all of which were considered severe impairments under the Act. Tr. 47. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 47-48.

At step four, the ALJ found Plaintiff had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently and sit/stand/walk for about six hours during an eight-hour workday, but must avoid hazards including unprotected heights and moving machinery. Tr. 48-55. Mentally, the ALJ determined Plaintiff was moderately[2] limited in her ability to maintain concentration, persistence, and pace, understand, remember, and carry out detailed instructions, and respond appropriately to usual work situations and routine work changes. Tr. 48-55. The ALJ determined Plaintiff could perform work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned and perform by rote, with few variables and little judgment, and the supervision required is simple, direct, and concrete. Tr. 48-55.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 55. However, after consulting a vocational expert, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] Accordingly, the ALJ determined

---

[2] Moderately limited means more than a slight limitation, but the person can perform in a satisfactory manner. Tr. 49.

[3] The ALJ determined Plaintiff could perform the requirements of representative light, unskilled occupations such as motel maid, of which there are 3792 jobs regionally and 431,391 jobs nationally, production and assembly worker, of which there are 7535 jobs regionally and 424,145 jobs nationally, and machine tender, of which

Plaintiff was not under a disability from January 1, 2003, the alleged onset date, through January 4, 2010, the date of the decision.  Tr. 56-57.

## V.     Discussion

On appeal, Plaintiff contends the ALJ erred by: (1) failing to find her skin impairment to be "severe;" (2) improperly determining her RFC; and (3) improperly dismissing her subjective complaints.  *See* Pl.'s Br. 12-18.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

The court finds that the ALJ did not adequately address the limitations arising from Plaintiff's skin condition.  The record is replete with references to Plaintiff's continual complaints of skin rashes, eczema, and hives.  Tr. 245-248, 333-344, 375-381, 465-470, 645-647, 682-768.  Her medical history reveals severe allergies resulting in multiple hospital visits and treatment with steroid shots, topical and oral steroids, and antibiotics, which provided minimal relief.  Tr. 245-248, 333-344, 375-381, 645-647, 682-768.  Despite treatment, Plaintiff continued to experience swelling, itching, hives, skin dryness/flaking, and redness.  Although Plaintiff's skin impairment may not be disabling, the frequency and consistency of treatment suggest that it has more than a minimal effect on Plaintiff's ability to work.  As noted by the Eighth Circuit, the standard for determining whether a claimant suffers from a severe impairment is a low or *de minimus* standard.  *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (reversing the decision of the ALJ and holding that a diagnosis of borderline intellectual functioning should be considered severe when that diagnosis is supported by sufficient medical evidence).  Moreover, the ALJ's failure to mention or discuss Plaintiff's skin condition makes it unclear to what extent it was considered when determining Plaintiff's RFC and

---

there are 3570 jobs regionally and 317,181 jobs nationally.  Tr. 55-56, 238-239.

her ability to performed the jobs identified. For the aforementioned reasons, the courts finds that substantial evidence does not support the ALJ's determination and remand is necessary for further development of the record.

### VI.     Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 9th day of March 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE